(99 App. Div. 405)

### STERN et al. v. SHAPIRO, REMICK & CO.

(Supreme Court, Appellate Division, First Department. December 23, 1904.)

1. INJUNCTION—RECEIVER—APPOINTMENT—POWERS.

In a suit for a receiver and to restrain the sale of a song on the ground that the author, who had sold it to defendant, was under contract to allow plaintiff to publish all his productions, there was doubt as to whether plaintiff was entitled to enforce the contract, and it also appeared that defendant had before publishing the composition inquired of plaintiff as to its rights therein, and that plaintiff had not answered the inquiry, nor made any claim until it appeared that the sales of the publication were profitable. Defendant was responsible. *Held*, that an order appointing a receiver, giving him access to defendant's books, and requiring defendant to sell the publication only for cash, to give a weekly account of the amount of sales and turn over their proceeds to the receiver, was too drastic.

Appeal from Special Term, New York County.

Action by Joseph W. Stern and another against Shapiro, Remick & Co. From an order appointing a receiver, defendants appeal. Reversed.

The action was brought to restrain the defendants from publishing and selling a certain musical composition or song, and for the appointment of a receiver and an accounting to the plaintiffs of moneys received from such publication and sale, on the ground that the composers, James T. Brymn and Ernest Hogan, from whom the defendants obtained the composition, were, at the time of its publication and sale by them, as defendants well knew, under contract to write and compose songs exclusively for the plaintiffs. The complaint alleged that the said James T. Brymn, together with R. C. McPherson, on November 23, 1902, entered into a written contract with the plaintiffs for the term of three years from date, granting to them the exclusive right and authority to publish and sell their musical compositions, and agreeing to be in daily attendance at plaintiffs' place of business and devote themselves exclusively to musical publications of the plaintiffs, as the latter should direct, at a joint salary of $10 per week against sums due for royalties, which were stipulated, upon their compositions accepted and published by the plaintiffs: that the said Brymn, on February 5, 1904, individually made with plaintiffs another written contract, ratifying and confirming the first contract, and assigning two songs to plaintiffs, the latter agreeing, in addition to the money consideration, to publish and offer for sale at least two of said Brymn's compositions each year; that plaintiffs fulfilled their part of the contracts, and paid said Brymn the sum of $105, but the latter failed to attend regularly plaintiffs' office, and plaintiffs ceased to make to him further advances; that on June 4, 1903, Ernest Hogan entered into a contract with plaintiffs for the term of two years from date, granting to plaintiffs the exclusive right to publish his compositions for due consideration, and plaintiffs have stood ready to carry out said agreement; that the said Brymn and Hogan composed the words and music of a song or composition entitled "D-i-s! P-o-s! Z-e-s!

Means Move," and in violations of their agreements aforesaid on March 27, 1904, delivered said composition to the defendant, who, with full knowledge of the contracts mentioned, published the same and offered it for sale, claiming it as its exclusive property, against the rights and protest of the plaintiffs, receiving large profits therefrom. The contracts mentioned are annexed to the complaint, and, in addition to the provisions stated, the one made with Brymn contains the following: "The parties of the second part (plaintiffs) shall have the right to terminate and end this agreement on the first day of January or July during its continuance by giving thirty days' notice to the parties of the first part of their intention so to do * * * and upon the mailing of such notice * * * this agreement and all its provisions shall cease, terminate and end on said first day of January or July as the case may be and the parties of the second part be freed from all obligations thereof." The contract with Hogan specifies certain songs, among which the song in question is not mentioned, and then grants, in consideration of the royalties stated for such songs, "the exclusive right for two years to publish all * * * compositions," and Hogan agrees "to write and compose exclusively for Jos. W. Stern & Co., for said two years." Upon the pleadings and papers, including numerous affidavits denying and affirming plaintiffs' alleged rights, the Special Term, upon plaintiffs' application for a preliminary injunction, granted their motion for the appointment of a receiver, but denied injunctive relief, without requiring any undertaking. From the order so entered, the defendants appeal.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Louis J. Vorhaus, for appellants.
David M. Neuberger, for respondents.

O'BRIEN, J. The order appealed from provides that "all copies of said song, both for vocal and instrumental purposes, and the words and music thereof, in whole or in part, shall be sold by the defendant, and that the sale of the same shall be only for cash." It also requires the defendant, weekly during the pendency of the action, to turn over to the receiver in cash all moneys so realized, and, prior to or at the time of such payment, to deliver an itemized statement of account, which shall be verified, showing the number and quantity of copies sold by the defendant and its agents during the previous week, "as well as the name and names, together with the addresses of the persons, firms, or corporations to whom the same shall have been sold; and that the said defendant shall afford to the said receiver and grant to him free and uninterrupted access to its said books and permit him without hindrance to inspect and examine the same fully and in detail concerning the said sales, and as to the number of copies of the said song in its different forms as well as to the said words and music which shall have been printed or caused to be printed by it." Then follows a provision enjoining the defendant from selling "for any purpose to any person excepting for cash, and for no less than the usual prices received for compositions of the same or like character in its business."

We think the order is too drastic and unnecessary. Before copyrighting the song or composition, the defendant sought of the plaintiffs information as to what rights if any they had with respect thereto, but its letter remained unanswered. It thus appears that the defendant purchased the song or composition without exact knowledge as to what rights, if any, the plaintiff had, and thereafter expended money in publishing the song; and it was only after it ap-

peared that the sales were likely to be profitable to the defendant that this action was brought. In addition, it appears that the defendant is responsible.

By the order appealed from, the court has placed upon the defendant the burden and expense of printing and publishing the song, with the possibility of loss, and has fixed the condition that it is not to be sold in the ordinary course of business upon credit, but only for cash; and, by the requirement of furnishing weekly verified itemized statements and giving to the receiver the right to inspect the books at his pleasure, the business of the defendant has been practically placed under the supervision of a receiver.

We do not mean to say that a situation might not be presented when an order as drastic as this in terms might not be justified, but we think it should only be granted in cases where the plaintiff's right to final relief in the action is placed beyond cavil, and where no other appropriate security is afforded to the plaintiff. Upon the merits, we think it extremely doubtful as to the plaintiffs' right eventually to succeed. In the case of Stern v. Von Tilzer Music Publishing Co., Law Journal Nov. 11, 1902, where a contract similar to those here presented was involved between the plaintiff and Brymn and McPherson, it was held that such contract was "unilateral and inequitable, and it is doubtful whether it can be enforced in equity." ·

It will be noticed that the contract here with Brymn and McPherson left it optional with the plaintiffs whether they would or would not publish any of the compositions of these two men, and it gave to the plaintiffs the right to terminate it either in July or January upon giving 30 days' notice. The second contract with Brymn differs, in that the plaintiffs agree to publish at least two of his compositions a year, but it will be noticed that it provides for the purchase by the plaintiffs of two songs, Brymn "to write and compose exclusively for said firm" for the unexpired period of about 10 months of the former contract, which, it is stated, is ratified. The provision as to purchase seemingly imposed no further obligation upon the plaintiffs, nor were the defects of the first contract now cured. The contract with Hogan does not bind the plaintiffs to publish any of his future compositions.

We have no desire, however, to dispose of the merits of this controversy, which should be left until the trial, but we have stated enough to show that the question as to the plaintiffs' right to ultimately recover is by no means placed beyond doubt or cavil. We concur in the view of the learned judge at Special Term in denying the motion for an injunction, and, with respect to the motion for a receiver, we think that should also have been denied. This was not a case for a receiver, and the most that plaintiffs were entitled to pendente lite was a bond or undertaking if there was any doubt of defendant's solvency or responsibility.

The order, accordingly, should be reversed, with $10 costs and disbursements, and the motion for the appointment of a receiver denied, with $10 costs. All concur.